1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARIA CHAVIRA,                          No.  1:19-cv-00538-DAD-SAB

12                    Plaintiff,

13          v.                                 ORDER DENYING PLAINTIFF'S MOTION
                                               FOR SUMMARY JUDGMENT AND
14    U.S. DEPARTMENT OF EDUCATION,            GRANTING DEFENDANT IMMEDIATE
      et al.,                                  CREDIT RECOVERY, INC.'S
15                                             APPLICATION AND MOTION FOR
                     Defendants.               SUMMARY JUDGMENT, IN PART
16
                                               (Doc. Nos. 30, 32, 39)
17

18

19          Before the court are the following two motions for summary judgment and an application

20   to supplement one of those motions with a declaration that was mistakenly filed late:  (i) plaintiff

21   Maria Chavira's motion for summary judgment against defendant U.S. Department of Education

22   ("DOE") filed on October 21, 2020, (Doc. No. 30); (ii) defendant Immediate Credit Recovery,

23   Inc.'s ("ICR") motion for summary judgment against plaintiff filed on October 26, 2020, (Doc.

24   No. 32); and (iii) defendant ICR's application to correct and substitute its previously filed motion

25   for summary judgment and declaration in support thereof filed on December 9, 2020, (Doc. No.

26   39).  The pending motions and application were taken under submission on the papers.  (Doc.

27   Nos. 31, 33, 37.)  For the reasons explained below, the court will deny plaintiff's motion for

28   /////

1

summary judgment as moot, grant defendant ICR's application to correct and substitute, and grant in part defendant ICR's motion for summary judgment.[1]

## BACKGROUND

**A.    Factual Background[2]**

This action arises from ICR seeking to collect a student loan debt on behalf of defendant DOE from plaintiff, a 73-year-old woman who claims that she is the victim of identity theft and that the debt ICR seeks to collect is not hers.

On May 28, 2018, ICR sent an initial collection letter to plaintiff stating that her "defaulted student loan or grant overpayment has been placed with [ICR] for the purposes of securing payment of this debt." (Doc. Nos. 39-1 at 52; 35-2 at ¶ 19.)  Among other things, the letter informed plaintiff that it was "an attempt [to] collect a debt" and that the letter was "from a debt collector." (Doc. No. 39-1 at 52.)  It specified the debt's principal balance, interest, fees, costs, and the resulting total balance. (*Id.*)  The letter also provided the following notice, in part:

> If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will:  obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

(*Id.*)  ICR received neither any written response from plaintiff to this initial collection letter nor

---

[1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion.  That situation has now been partially addressed by the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December 17, 2021.  Nonetheless, for over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation resulted in the court not being able to issue orders in submitted civil matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

[2]  The facts set forth in this section of this order are undisputed unless otherwise noted.  *See* Fed. R. Civ. 56(e) (stating where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").  To the extent certain facts, or conclusions, are not mentioned, the court has not relied on them in resolving the pending motions.  Thus, plaintiff's evidentiary objections, unless specifically addressed below, are denied as having been rendered moot.

1   any returned mail indicating plaintiff had not received it.  (Doc. No. 35-2 at ¶¶ 22–23.)  Some 70

2   days later, on August 6, 2018, plaintiff first contacted ICR by telephone and advised ICR that she

3   had received the initial collection letter but did not believe the debt belonged to her.  (*Id.* at ¶¶

4   24–25.)  ICR told plaintiff that it would locate the promissory note associated with the account

5   and send it to plaintiff.[3]  (Doc. No. 39-1 at 62.)  On or about that same day, August 6, 2018, ICR

6   mailed plaintiff a second collection letter with identical language as that appearing in the first

7   letter.  (Doc. No. 30-1 at ¶ 3.)

8        Less than 30 days later, on August 21, 2018, plaintiff's counsel sent a letter to ICR

9   claiming that plaintiff did not owe the debt and that she had been the victim of identity theft.

10  (Doc. Nos. 39-1 at 62; 30-1 at ¶ 5.)  Three months later, on November 30, 2018, a paralegal from

11  plaintiff's counsel's office called ICR and was informed that plaintiff's account was in "cease and

12  desist status."  (Doc. No. 39-1 at 62.)  That same day, ICR mailed a third collection notice, this

13  time addressed to plaintiff's counsel, with identical language as that appearing in the first two

14  letters.  (*Id.*; Doc. No. 30-1 at 35.)

15  /////

16  /////

17

---

18  [3]  In a declaration submitted in support of ICR's pending motion for summary judgment, senior
    project manager Lawrence Rathbun states that "[o]nce the [promissory note] was located, ICR
19  mailed a copy of the [promissory note] to Plaintiff on or about August 7, 2018 along with a
    second collection notice."  (Doc. No. 35-2 at ¶ 26.)  Plaintiff disputes this fact based on paragraph
20  19 of her own declaration (Doc. No. 30-1) and paragraph 4 of her supplemental declaration (Doc.
    No. 35).  (Doc. No. 35-2 at ¶ 26.)  The court finds, however, that plaintiff has failed to adequately
21  show that there is a genuine dispute as to this fact.  First, plaintiff's supplemental declaration is
    unsigned and is thus inadmissible.  *See Wilson v. City of Merced*, No. 1:07-cv-01235-LJO-DLB,
22  2008 WL 4737159, at *4 (E.D. Cal. Oct. 28, 2008) ("An unsigned declaration is inadmissible to
    oppose a summary judgment.").  Second, in paragraph 19 of her declaration, plaintiff does not
23  dispute that ICR sent her the promissory note on August 7, 2018; rather, she merely references a
    specific student loan agreement that she claims she did not sign and did not receive from DOE
24  until discovery was conducted in this action.  (Doc. No. 30-1 at ¶ 19.)  Thus, plaintiff has failed to
    establish a genuine dispute of fact as to whether the promissory note was sent to her by ICR on
25  August 7, 2018.  *See Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1240 (C.D. Cal.
26  2012) ("To overcome the presumption of mailing and receipt [of a debt verification], a debtor
    must prove by clear and convincing evidence that the mailing was not, in fact, accomplished.").
27  As discussed further below, however, the court does not rely on this fact in ruling on the pending
28  motions.

3

Throughout December 2018 and early January 2019, plaintiff's counsel and non-party LifeLock[4] communicated with ICR on plaintiff's behalf regarding forms plaintiff could submit to establish that she had been the victim of identity theft and that the debt at issue was not hers. (*See* Doc. No. 39-1 at 62–63.) ICR received an identity theft victim's complaint and affidavit in late 2018 and DOE's identity theft application in early 2019 from plaintiff's representatives seeking to establish her identity theft claim and to discharge the debt. (Doc. Nos. 39-1 at 63; 30-1 at 38–44, 52–60.) On January 15, 2019, ICR advised LifeLock that plaintiff's documentation had been uploaded for review by the DOE, but that it ultimately denied plaintiff's application approximately one month later because it determined that the documentation plaintiff had submitted was insufficient to verify that she was not the individual who owed the disputed debt. (Doc. No. 39-1 at 63; 35-2 at ¶ 32.)

On February 21, 2019, ICR advised a paralegal in plaintiff's counsel's office by telephone conversation that the DOE had rejected plaintiff's identity theft application. (Doc. No. 35-2 at ¶ 33.) The paralegal reiterated to ICR the claim that plaintiff was the victim of identity theft, that the debt was not plaintiff's, and inquired as to what else could be done. (Doc. No. 39-1 at 45 (referring to entries on Exhibit B dated February 21, 2019).) On March 15, 2019, LifeLock also called ICR seeking assistance in appealing DOE's decision in this regard, and ICR advised that plaintiff could attempt to submit as much additional documentation to DOE as possible. (Doc. No. 35-2 at ¶¶ 34–35.) That same day, ICR mailed a fourth collection letter directly to plaintiff with identical language as that contained in the first three collection letters. (Doc. No. 30-1 at 46.) After ICR received this lawsuit on May 3, 2019, there were no subsequent communications between the parties. (Doc. No. 39-1 at 63.)

**B.     Procedural Background**

On April 25, 2019, plaintiff filed her complaint in this action asserting a claim for declaratory relief against defendant DOE and a claim brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, against defendant ICR for three asserted

---

[4] LifeLock appears to be an identity theft protection company hired by plaintiff and working on her behalf. (*See* Doc. No. 30-1 at 52.) LifeLock is not a party to this action.

1   violations under 15 U.S.C. §§ 1692g, 1692e, and 1692f.  (Doc. No. 1 at ¶¶ 40–42.)  This case now

2   proceeds only on plaintiff's FDCPA claim brought against defendant ICR.[5]

3           On October 26, 2020, defendant ICR filed its pending motion for summary judgment

4   arguing that it:  (1) complied with the all the requirements of the FDCPA, and (2) that it properly

5   relied on its creditor, the DOE, regarding the validity of the underlying debt obligation.  (Doc.

6   No. 32.)  Plaintiff filed her opposition to the motion on November 23, 2020.  (Doc. No. 35.)  On

7   December 8, 2020, ICR filed its reply.  (Doc. No. 38.)  When ICR filed its reply brief, it realized

8   that it had not filed a supporting declaration by Lawrence Rathbun and exhibits thereto, which it

9   had intended to file concurrently with its motion for summary judgment on October 26, 2020.

10  (*See* Doc. Nos. 36, 37.)  Accordingly, on December 9, 2020, defendant ICR filed an application to

11  correct and substitute its previously filed motion for summary judgment with a motion that

12  includes the Rathbun declaration and exhibits.  (Doc. No. 39.)  Plaintiff opposed that application

13  on December 11, 2020.  (Doc. No. 41.)

14  **C.      ICR's Application**

15          In ICR's application, it seeks permission to substitute its originally filed motion for

16  summary judgment, (Doc. No. 32), with a version that includes the Rathbun declaration and

17  supporting exhibits because its failure to include them with the original filing was due to

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24

25  [5]  On November 5, 2020, plaintiff filed a notice that she had accepted an offer of judgment from
    defendant DOE under Federal Rule of Civil Procedure 68.  (Doc. No. 34.)  On January 7, 2021,

26  judgement was entered against defendant DOE, declaring that plaintiff "is not indebted to the
    Department of Education for any amounts."  (Doc. Nos. 43 at 2; 44.)  Accordingly, plaintiff's

27  pending motion for summary judgment against defendant DOE (Doc. No. 30) will be denied as
    having been rendered moot by her acceptance of defendant DOE's Rule 68 offer of judgment.

28  The court will also direct the Clerk of the Court to terminate DOE as a defendant in this action.

1  "mistake, inadvertence, surprise or excusable neglect."  (Doc. No. 39 at 1) (citing Fed. R. Civ. P.

2  60(b)(1)).[6]

3       "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,'

4  courts must apply a four-factor equitable test, examining:  (1) the danger of prejudice to the

5  opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the

6  reason for the delay; and (4) whether the movant acted in good faith."  *Ahanchian v. Xenon*

7  *Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citing *Pioneer*, 507 U.S. at 395).

8        ICR claims in its application that the only difference between the two versions of its

9  motion for summary judgment is that the original (filed) version of the motion inadvertently

10  omitted the declaration and exhibits.  (Doc. No. 39 at 1.)  ICR asserts that because it nevertheless

11  served a copy of the Rathbun declaration and exhibits on plaintiff by email on October 26, 2020,

12  plaintiff was not prejudiced by its filing error in this regard.  (*Id.* at 2–3; Doc. No. 39-2 at 2.)  In

13  fact, ICR points out that plaintiff referenced the Rathbun declaration in her own opposition brief

14  and did not oppose ICR's motion based on its failure to actually file the Rathbun declaration.

15  (Doc. Nos. 39 at 3; 35 at 6.)  Finally, ICR contends the omission was "entirely unintentional" and

16  the clerical error should not prevent its motion from being decided on the merits.  (Doc. No. 39 at

17  3.)

18        In opposition, plaintiff argues that "[w]e never received the filed Declaration of Lawrence

19  Rathbun, and had to work off a draft."  (Doc. No. 41 at 2.)  Nonetheless, plaintiff does not claim

20  that the "draft" her counsel received was different in any way from the late-filed copy, nor does

21  plaintiff claim prejudice from the late filing of the Rathbun declaration.  Instead, her short

22

23  [6] Although ICR cites to Rule 60(b), because ICR is not seeking relief from an order, ICR's
application is more appropriately addressed under Rule 6(b), which provides that the court may
24  grant extensions of time for good cause shown "if the party failed to act because of excusable
neglect."  Fed. R. Civ. P. 6(b).  Both rules deal with "excusable neglect" and the Supreme Court
25  has concluded that "the determination [of 'excusable neglect'] is at bottom an equitable one,
taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv.*
26  *Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also Briones v.*
*Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) ("[T]his court held that the Supreme
27  Court's analysis of 'excusable' neglect in *Pioneer* is applicable to Rule 6(b). . . .")  Thus, ICR's
28  request will be deemed as if brought under Rule 6(b).

1  opposition to the application focuses on the merits of ICR's motion for summary judgment.  (*Id.*

2  at 4.)

3        Here, there does not appear to be any danger of prejudice to plaintiff because ICR emailed

4  plaintiff's counsel the Rathbun declaration with exhibits on October 26, 2020, the date ICR filed

5  its motion for summary judgment with the court.  (Doc. No. 39-2 at 2.)  Plaintiff does not

6  contend—nor does it appear from the court's review—that the Rathbun declaration received by

7  plaintiff on October 26, 2020 is in anyway different from the copy submitted to the court on

8  December 9, 2020.  (*Compare* Doc. No. 39-2 at 13–46 *with* 39-1 at 21–54.)  Indeed, plaintiff

9  primarily opposes ICR's application because she disputes a fact asserted in the Rathbun

10 declaration, not because she did not have the opportunity to review and respond to the Rathbun

11 declaration in her brief in opposition to ICR's motion for summary judgment.  (Doc. No. 41 at 4.)

12 ICR's mistake has not delayed or impacted these proceedings, nor is there any argument or

13 evidence from plaintiff that ICR was operating in bad faith when it promptly filed the pending

14 application and Rathbun declaration upon realizing its mistake when filing its reply brief.

15 Although the reason for delay is entirely ICR's fault, its neglect in this instance is excusable.  The

16 court will resolve ICR's pending motion on the merits, not deny it based on a procedural

17 technicality.

18        Accordingly, defendant ICR's application is granted, and the court will consider exhibit A

19 to the application, (Doc. No. 39-1), as the operative version of ICR's motion for summary

20 judgment.

21                              **LEGAL STANDARD**

22        Summary judgment is appropriate when the moving party "shows that there is no genuine

23 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

24 Civ. P. 56(a).

25        In summary judgment practice, the moving party "initially bears the burden of proving the

26 absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

27 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party

28 may accomplish this by "citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see*

*Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

### A.      Threshold Requirements for FDCPA Claims

The FDCPA "was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  "The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Id.* at 1060–61.  The FDCPA does not ordinarily require proof of intentional violation; it is a strict liability statute. *Id.* at 1061.  "In order for a plaintiff to recover under the FDCPA, there are three threshold requirements:  (1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector'; and (3) the defendant must have

1   committed some act or omission in violation of the FDCPA." *Warner v. Midland Credit Mgmt.,*

2   *Inc.*, 540 F. Supp. 3d 946, 957 (C.D. Cal. 2021).

3           In the Ninth Circuit, whether a debt collector's conduct violates the FDCPA "requires an

4   objective analysis that takes into account whether 'the least sophisticated debtor would likely be

5   misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir.

6   2010) (citation omitted); *see also Warner*, 540 F. Supp. 3d at 960 n.6 ("This principle [] governs

7   sections 1692e, 1692f, and 1692g of the FDCPA.").  "The objective least sophisticated debtor

8   standard is 'lower than simply examining whether particular language would deceive or mislead a

9   reasonable debtor.'" *Terran v. Kaplan*, 109 F.3d 1428, 1431–32 (9th Cir. 1997) (citation

10  omitted).  "The standard is 'designed to protect consumers of below average sophistication or

11  intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are

12  targeted by debt collectors." *Gonzales*, 660 F.3d at 1062 (citation omitted).  "This objective

13  standard 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd[,] . .

14  . the ignorant, the unthinking and the credulous.'" *Clark v. Capital Credit & Collection Servs.,*

15  *Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (citation omitted).  "At the same time, the standard

16  'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and

17  willingness to read with care.'" *Gonzales*, 660 F.3d at 1062 (citation omitted).  Thus, "[m]ost

18  courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible,

19  [] her interpretation of a collection notice cannot be bizarre or unreasonable." *Evon v. Law*

20  *Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012); *see also Gonzales*, 660 F.3d at

21  1062 ("The FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or

22  'peculiar' misinterpretations.").

23          Here, it is undisputed that plaintiff is a "consumer" and that defendant ICR is a "debt

24  collector" under the FDCPA.  (*See* Doc. Nos. 39-1, 35-1, 38.)  But the parties contest whether

25  ICR is liable for having "committed some act or omission in violation of the FDCPA,"

26  specifically §§ 1692g, 1692e, 1692f.  (*See* Doc. Nos. 39-1, 35-1, 38.)  With the above guidance in

27  mind, the court will now consider whether ICR can show that there is no genuine dispute as to

28  any material fact and that it is entitled to judgment as a matter of law in its favor on plaintiff's

10

FDCPA claim.  The court will address each asserted violation in turn.

**B.      Alleged Violation of 15 U.S.C. § 1692g**

Section 1692g requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall" send the consumer a written notice containing certain information unless that information was included in the initial communication.  15 U.S.C. § 1692g(a).  Among other things, the written notice must inform the consumer that if the consumer disputes the debt in writing within 30 days after receiving the written notice, the debt collector will obtain verification of the debt and mail a copy of that verification to the consumer.  *Id.* § 1692g(a)(4).  When a consumer timely disputes a debt in writing within that 30-day period, the debt collector must then cease collection of the debt until it obtains a verification of the debt and mails a copy of that verification to the consumer.  *Id.* § 1692g(b).  However, a "tardy request for verification of the debt . . . [does] not trigger any obligation on the part of the [debt collector] to verify the debt."  *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1202–03 (9th Cir. 1999) (affirming summary judgment in favor of debt collector when the debtor's request for debt verification was sent nine months after receiving the debt collector's initial written notice).

The court finds that ICR is entitled to summary judgment in its favor on plaintiff's FDCPA claim, to the extent it is predicated on a violation of § 1692g, because it has demonstrated that there is no genuine issue of disputed material fact here.  Instead the evidence on summary judgment establishes that plaintiff did not submit her debt verification request to ICR within 30 days of ICR's initial communication on May 28, 2018.   (*See* Doc. No. 35-2 at ¶¶ 19–24.)  Simply put, the debt verification requirements that plaintiff contends ICR violated were not triggered because plaintiff did not timely dispute the debt in response to ICR's initial communication made on May 28, 2018.  Nevertheless, plaintiff opposes summary judgment as to this claim, advancing two arguments, both of which the court finds unavailing because they lack support in the law or in the evidence presented to the court on summary judgment.

First, plaintiff asserts that her case "stands on different footing from *Mahon*" because plaintiff does not owe the debt at issue.  However, plaintiff fails to cite any legal authority

1   suggesting that this would make any difference.  (Doc. No. 35-1 at 3.)  The court does not read

2   the decision in *Mahon* as requiring that the debt must ultimately be valid; the court there simply

3   held that a request for verification that came nearly nine months after the initial notice was

4   provided did not trigger an obligation to verify.  *Mahon*, 171 F.3d at 1202–03.  Because plaintiff

5   does not offer any legal authority to support departing from Ninth Circuit precedent, the court is

6   bound in resolving this issue.  *Id.*; *see also Calove v. Nationstar Mortg., LLC*, 698 F. App'x 386,

7   387 (9th Cir. 2017) (affirming dismissal of a § 1692g claim when the consumer's notice disputing

8   debt came more than 30 days after the debt collector's initial communication);[7] *Mulyana v. AFNI,*

9   *Inc.*, No. 2:12-cv-03634-SVW-PJW, 2012 WL 12878751, at *3 (C.D. Cal. Oct. 1, 2012) (granting

10   summary judgment when the request for verification and dispute of debt came several months

11   after the initial collection notice).

12          Second, plaintiff argues that she did dispute the debt and requested verification in a letter

13   dated August 21, 2018 from her attorney, which came fewer than 30 days after ICR sent a *second*

14   letter dated August 6, 2018.  (Doc. No. 35-1 at 5.)  But the debt verification rights provided under

15   § 1692g(b) are tied to the debt collector's *first* communication with the debtor, not the second.

16   *See* 15 U.S.C. § 1692a(2) (defining "communication" as "the conveying of information regarding

17   a debt directly or indirectly to any person through any medium"); *Hernandez v. Williams, Zinman*

18   *& Parham PC*, 829 F.3d 1068, 1070 (9th Cir. 2016) (holding "that the phrase 'the initial

19   communication' [in § 1692g] refers to the first communication sent by any debt collector"); *see*

20   *also Mayen v. New Penn Fin., LLC*, No. 3:17-cv-00050-JLS-MDD, 2018 WL 2427177, at *5

21   (S.D. Cal. May 29, 2018) ("Sections 1692g(a) and 1692g(b) both establish that a consumer

22   wishing to dispute a debt must do so within thirty days of receipt of initial communication.").

23   Plaintiff offers no legal authority to the contrary.  The written request for debt verification must

24   come within "the thirty-day period described in [§ 1692g](a)," which in turn, commences within

25   five days (at the latest) of the debt collector's "initial communication."  15 U.S.C. §§ 1692g(b),

26   1692g(a).  Here, because that initial communication took place on May 28, 2018, plaintiff's

27   _____

28   [7] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
36-3(b).

1    August 21, 2018 letter disputing the debt and requesting verification was sent well outside the 30-

2    day period provided in § 1692g(b).[8]  *See Richmond v. Higgins*, 435 F.3d 825, 829 n.5 (8th Cir.

3    2006) ("The FDCPA does not speak to whether the protections provided under § 1692g(b) attach

4    if the debtor disputes the debt after the expiration of the thirty-day period.").

5          Accordingly, because there is no dispute of material fact that plaintiff did not make a

6    written debt verification request within 30 days of receiving ICR's initial communication, ICR

7    did not violate § 1692g.  The court will therefore grant ICR's motion for summary judgment in its

8    favor on plaintiff's FDCPA claim to the extent it is predicated on an alleged violation of § 1692g.

9    **C.     Alleged Violation of 15 U.S.C. § 1692e**

10         Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading

11   representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The

12   FDPCA outlines a non-exclusive list of sixteen categories of conduct that constitute violations of

13   § 1692e.  *See id.* § 1692e(1)–(16).  Among other things, the "false representation of . . . the legal

14   status of any debt" constitutes a violation.  *Id.* § 1692(e)(2)(A).  In the Ninth Circuit, "a debt

15   collector's liability under § 1692e of the FDCPA is an issue of law."  *Gonzales*, 660 F.3d at 1061.

16   As explained above, "[i]f the least sophisticated debtor would 'likely be misled' by a

17   communication from a debt collector, the debt collector has violated the [FDCPA]."  *Guerrero v.*

18   *RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).  There is also a materiality element to

19

20   _____

[8]  The evidence before the court on summary judgment also suggests that ICR did follow the

21   procedures outlined in § 1692g by verifying plaintiff's debt on August 7, 2018, the day after
     plaintiff first contacted ICR and ICR mailed a copy of the promissory note to plaintiff.  (Doc. No.

22   35-2 at ¶ 26.)  Although plaintiff strenuously disputes what she erroneously characterizes as a
     "critical" fact, she fails to offer admissible evidence adequately disputing that ICR mailed her a

23   copy of the promissory note; she merely asserts that ICR "never obtained or provided plaintiff
     with, any verification of the debt."  (Doc. No. 35-1 at 3–4.)  As noted above in footnote 3, this

24   argument is unsubstantiated and insufficient to establish a genuine dispute of material fact.
     Moreover, under *Mahon*, § 1692g "requires only that a Notice be 'sent' by a debt collector" and a

25   "debt collector need not establish actual receipt by the debtor."  *Mahon*, 171 F.3d at 1201.  Thus,
     plaintiff's argument that she did not *receive* the promissory note falls well short of establishing

26   that there is any evidence of a violation of § 1692g here.  *See id.*  However, the court need not
     (and does not) rely on whether ICR actually sent promissory note to resolve plaintiff's § 1692g

27   claim because the evidence is clear that plaintiff's debt verification request was "tardy" and thus

28   did not trigger § 1692g's debt verification procedures.  *Id.* at 1202–03.

1 § 1692e: "the materiality requirement functions as a corollary inquiry into whether a statement is

2 likely to mislead an unsophisticated consumer." *Donohue*, 592 F.3d at 1034. "In assessing

3 FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but

4 instead with genuinely misleading statements that may frustrate a consumer's ability to

5 intelligently choose his or her response." *Id.* Thus, "false but non-material representations are

6 not likely to mislead the least sophisticated consumer and therefore are not actionable under §§

7 1692e or 1692f." *Id.* at 1033.

8       In its pending motion, ICR misconstrues the legal standard governing a claim brought

9 under § 1692e. ICR contends that it could not have violated § 1692e (or § 1692f) because it was

10 legally entitled to rely on its client and creditor, DOE, regarding the debt's validity. (Doc. No.

11 39-1 at 17–18) (citing *Clark*, 460 F.3d at 1173–74). According to ICR, the Ninth Circuit's

12 decision in *Clark* stands for the propositions that it may rely on information a creditor provides it,

13 that a debt collector's verification of a debt "involves nothing more than the debt collector

14 confirming in writing that the amount being demanded is what the creditor is claiming is owed,"

15 and that "[w]ithin reasonable limits, [the debt collector is] entitled to rely on [its] client's

16 statements to verify the debt." (*Id.*) (quoting *Clark*, 460 F.3d at 1173–74). ICR also relies on a

17 district court's decision in *Eliman v. L. Off. of Weltman*, No. 12-cv-01599-DMG-FMO, 2013 WL

18 12119720 (C.D. Cal. Jan. 2, 2013), in which the district court granted summary judgment in favor

19 of a debt collector on the debtor's § 1692e and § 1692f claims, rejecting the debtor's argument

20 that because the debt never belonged to her, the debt collector violated the FDCPA simply by

21 trying to collect the debt. *Id.* at *2, 5. Applying the reasoning from these decisions, ICR argues

22 that it reasonably relied on information provided to it by DOE—including DOE's determination

23 rejecting plaintiff's attempt to discharge the debt due to purported identity theft—in attempting to

24 collect from the plaintiff. (Doc. No. 39-1 at 19.) Thus, ICR contends that "no FDCPA liability"

25 can result from its reasonable reliance. (*Id.*)

26       ICR misreads the decision in *Clark*. The citations to *Clark* in ICR's pending motion

27 articulates the Ninth Circuit's standard that a debt collector must follow when a debtor makes a

28 timely verification of debt request under § 1692**g**—not § 1692**e**, which is the subsection put at

14

1    issue by this claim brought by plaintiff.  *See Clark*, 460 F.3d at 1174 (finding that because the

2    debt collectors "satisfied the requirement that they confirm with their client the particular amount

3    being claimed . . . they did not violate §§ 1692g(a)(4) or 1692g(b)").  In fact, the Ninth Circuit

4    examined § 1692e in a later section of its decision in *Clark* and held that § 1692e applies "even

5    when a false representation is unintentional."  *Id.* at 1175–76.  Accordingly, ICR's reliance on the

6    information provided to it by DOE is irrelevant in determining whether a violation of § 1692e

7    occurred (though intent remains relevant for determining damages).[9]  *Id.* at 1176 & n.11.

8         The court also finds the district court's decision in *Eliman* inapposite.  ICR argues that the

9    decision granting summary judgment in favor of the debt collector in *Eliman* is "instructive"

10   because the plaintiff in that case disputed the existence of the debt and claimed that it never

11   actually belonged to her.  (Doc. No. 39-1 at 18 (citing *Eliman*, 2013 WL 12119720, at *5).)

12   While those facts may be similar to those presented here, the district court's decision in *Eliman* is

13   not instructive as to the proper resolution of the legal issues presented by ICR's pending motion.

14   In *Eliman*, the court's analysis regarding § 1692e (and § 1692f) centered on the debt collector's

15   asserted *bona fide* error affirmative defense under § 1692k(c)—a defense that ICR did not move

16   /////

17   /////

18   /////

19   /////

20   /////

21   /////

22

23   [9]  The court acknowledges that ICR's reasonable reliance would be relevant under the *bona fide*
     error affirmative defense provided for by 15 U.S.C. § 1692k(c).  *See Clark*, 460 F.3d at 1176–77.

24   But this is a "narrow exception to strict liability under the FDCPA" and because it is an
     affirmative defense to it, ICR would bear "the burden of proof at summary judgment."  *Id.* at

25   1177.  Though ICR asserts this defense in its answer, ICR does not mention or cite to that defense
     in its pending motion.  (*See* Doc. Nos. 39-1 at 17–19; 38 at 1–10.)  Thus, the court will not

26   address the potential merits of any such affirmative defense in this order.  *See Katz v. Children's
     Hosp. of Orange Cnty.*, 28 F.3d 1520, 1534 (9th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323)

27   ("[A] party seeking summary judgment always bears the initial responsibility of informing the
     district court of the *basis* for its motion.").

28

                                             15

1    for summary judgment on in its pending motion.[10]  *See Katz*, 28 F.3d at 1534.

2          Applying the correct legal standard and based on the undisputed facts here, the court finds

3    that defendant ICR has failed to establish that it is entitled to judgment as a matter of law

4    regarding whether it falsely represented the legal status of the debt in violation of § 1692e.  For

5    this analysis, the relevant communications are four letters sent by defendant ICR to plaintiff

6    (dated May 28, 2018; August 6, 2018; November 30, 2018; and March 15, 2019), and which were

7    identical in substance.  (*See* Doc. Nos. 39-1 at 52; 30-1 at 17, 35, 46.)  Those letters represented

8    to plaintiff that she had defaulted on her "student loan or grant overpayment" and that ICR was a

9    "debt collector" attempting to "collect a debt."  (*See, e.g.*, Doc. No. 30-1 at 46.)  The letters

10   detailed plaintiff's account number, along with the principal balance, interest, fees and costs,

11   penalty charges, and total balance of the debt owed.  (*Id.*)  The letters also informed plaintiff that

12   unless she notified ICR within 30 days after receipt of the letter that she disputed the validity of

13   the debt, ICR would assume that the debt was valid.  (*Id.*)

14         ICR first contends that there "are zero facts of record to support the proposition that ICR

15   engaged in 'collection efforts' after August 6, 2018."  (Doc. Nos. 38 at 8.)  Plaintiff disputes

16   ICR's assertion by pointing to the March 15, 2019 letter, which the court agrees constituted an

17   attempt to "collect a debt" as the letter itself states.  (Doc. Nos. 30-1 at 46; 35-2 at ¶¶ 28–29.)

18   Notably, in its reply, ICR does not mention, let alone meaningfully address, the March 15, 2019

19   _____

20   [10]  In its reply brief, ICR also cites the district court's decision in *Story v. Midland Funding LLC*,
     No. 3:15-cv-00194-AC, 2015 WL 7760190 (D. Or. Dec. 2, 2015).  In ruling on a motion for
21   judgment on the pleadings in that case, the district court rejected the premise "that attempting to
     collect a debt that the consumer does not actually owe is false, misleading, or deceptive" under §
22   1692e.  *Id.* at *6.  The court found that "the structure of the FDCPA and the case law interpreting
     it do not support that legal theory."  *Id.* at 6 (collecting cases).  The reasoning underpinning the
23   decision in *Story* and the cases it relied on have been found by other district courts to be
     discordant with the "unintentional" standard articulated by the Ninth Circuit in *Clark* for
24   violations of § 1692e.  *See Opico v. Convergent Outsourcing, Inc.*, No. 2:18-cv-01579-RSL, 2021
     WL 1611505, at *5 (W.D. Wash. Apr. 26, 2021) (reviewing *Story* and the cases on which it relied
25   and finding its approach "inconsistent with the Ninth Circuit's *Clark* decision"); *Healey v. Trans
     Union LLC*, No. 2:09-cv-0956-JLR, 2011 WL 1900149, at *8 n.5 (W.D. Wash. May 18, 2011)
26   (noting that the Ninth Circuit in *Clark* disapproved of the standard applied in the principal case
     upon which *Story* relied).  Having reviewed those cases, the court declines to follow the decision
27   in *Story* and finds the reasoning in *Opico* and *Healey* to instead be consistent with the court's own
     reading of the Ninth Circuit's decision in *Clark*.
28

letter, or otherwise counter plaintiff's argument that this letter constituted an attempt to collect a debt. In addition, ICR does not dispute plaintiff's unequivocal statements disclaiming the underlying debt (i.e., her declaration that she never enrolled in the colleges in question, never applied for or received a Pell grant, student loan, or federal student aid, and never received funds from or owed any amounts to the DOE). (*See* Doc. No. 30-1 at ¶¶ 18–19, 25–34.) Because ICR does not contest any of these facts, they are deemed undisputed for purposes of resolving this motion. *See* Fed. R. Civ. 56(e). Thus, there is no dispute on summary judgment that the debt that ICR sought to collect from plaintiff was not actually a debt that was legally owed by her.

ICR also had reason to question the validity of the debt before sending the March 15, 2019 letter to plaintiff. In the intervening months between August 6, 2018 and March 15, 2019, ICR continued to advise and instruct plaintiff, her counsel, and LifeLock[11] on the steps to take in order to dispute the validity of the debt, including: submitting paperwork to the DOE regarding the theft of her identity, challenging the DOE's determination of insufficient evidence, and continuing to submit "as much proof as possible" to DOE to appeal DOE's decision. (*See* Doc. Nos. 39-1 at 44–45, 62–63; 35-2 at ¶¶ 29–35; 35-1 at ¶ 29.) Despite knowing plaintiff was still actively contesting the debt, ICR sent her a fourth collection letter on March 15, 2019. (Doc. No. 30-1 at ¶ 16.) Thus, ICR knew plaintiff contested that the debt belonged to her and had received evidence from plaintiff supporting her claim, (Doc. No. 39-1 at 63), but still sent out a collection letter asserting unequivocally that it was a valid debt belonging to plaintiff. *Cf. Valdez v. Action Fin. Servs., LLC*, No. 3:20-cv-00015-LRH-CLB, 2021 WL 5108755, at *6 (D. Nev. Aug. 3, 2021) (granting summary judgment in favor of a debt collector on a § 1692e(2)(A) claim when plaintiff refused to complete DOE's process for disputing validity of debt and submitted no evidence suggesting the legal status of the debt had been falsely represented); *Blackmon v. Ad Astra Recovery Servs., Inc.*, No. 3:20-cv-00800-CAB-JLB, 2021 WL 1541647, at *3 (S.D. Cal.

---

[11] ICR admits to having several communications with plaintiff's counsel and LifeLock in response to their inquiries about proving that plaintiff was the victim of identity theft. (Doc. No. 38 at 6–7.) Plaintiff does not appear to contend—nor does the court consider—the communications between ICR and plaintiff's counsel or LifeLock to be relevant evidence as to her claim of violations of the FDCPA. *See also Guerrero*, 499 F.3d at 934 (holding "that communications directed solely to a debtor's attorney are not actionable under the [FDCPA]").

Apr. 20, 2021) (granting summary judgment for the debt collector on § 1692e(2)(A) claim when it "made no attempt to collect the debt" after being notified that plaintiff claimed she did not owe the debt).[12]

Viewing the evidence in the light most favorable to plaintiff, from the perspective of the least sophisticated consumer, and mindful that the FDCPA does not require proof that a violation of § 1692e(2)(A) was knowing or intentional, the court concludes that defendant has not established that it is entitled to judgment as a matter of law in its favor on plaintiff's claim for violation of § 1692e.  Critically, the undisputed facts before the court on summary judgment show that ICR sent collection letters to plaintiff representing that the debt it sought to collect was legally owed by plaintiff when it, in fact, was not.  *See Healey*, 2011 WL 1900149, at *8–9 (finding that the plaintiff presented disputed issues of fact when the debt collector "represented in its collection letters and to the credit reporting agencies that the delinquent Sprint/Embarq account belonged to" plaintiff); *Opico*, 2021 WL 1611505, at *6 (finding plaintiff presented disputed issues of fact when the debt collector represented in collection letters that the debt belonged to plaintiff even after plaintiff told the debt collector that he "'did not have any knowledge' of the alleged debt and that he would be disputing the debt").

The court will therefore deny ICR's motion for summary judgment on plaintiff's FDCPA claim to the extent it is predicated on an alleged violation of § 1692e.

**D.     Alleged Violation of 15 U.S.C. § 1692f**

Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDPCA outlines a non-

---

[12]  Although plaintiff's failure to timely dispute the debt under § 1692g meant that "the debt will be assumed to be valid by the debt collector," 15 U.S.C. § 1692g(a)(3), that failure "may not be construed by any court as an admission of liability by the consumer."  *Id.* § 1692g(c).  Even if ICR was entitled to assume that the debt was valid, "[a] misstatement of a debt need not be knowing or intentional to create liability under [§ 1692e(2)(A)]."  *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 685 (D. Haw. 2017).  The FDCPA readily offers a means for rectifying unintentional violations through the *bona fide* error defense.  *See Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1139 (9th Cir. 2021) ("As we have explained, the FDCPA offenses at issue lack a *mens rea* requirement because the statute imposes strict liability.  But the *bona fide* error defense is the statute's 'narrow exception to strict liability.' [citation]  It relieves liability for certain 'unintentional' violations, thereby functioning similarly to a *mens rea* requirement.").

exclusive list of eight categories of conduct that constitute violations of § 1692f.  *See id.* § 1692f(1)–(8).  As with § 1692e claims, whether conduct violates § 1692f "requires an objective analysis that considers whether 'the least sophisticated debtor would likely be misled by a communication.'"  *Donohue*, 592 F.3d at 1033 (citation omitted).  The same materiality requirement for claims arising under § 1692e also applies to those arising under § 1692f.  *Id.*

Among the eight listed categories in § 1692f, plaintiff appears to argue that ICR violated § 1692f(1).  (Doc. Nos. 1 at ¶ 41; 35-1 at 4.)  That provision prohibits a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  "Many courts have interpreted section 1692f(1) to address the abusive practice of 'collecting an amount greater than that which is owing,' not collecting on a debt that turns out to have been incurred by another person."  *Opico*, 2021 WL 1611505, at *9 (collecting cases); *see also Clark*, 460 F.3d at 1178 ("[W]hen [the debt collector] pursues a debt it *knows* is overstated . . . [it] seeks to collect an amount that is not permitted by law in contravention of § 1692f(1).").

In her complaint, plaintiff alleges that ICR violated § 1692f when it sought to collect amounts from her that were not authorized by the agreement creating the debt (because, as plaintiff alleges, there was no debt owed by her).  (Doc. No. 1 ¶ 41.)  In other words, plaintiff appears to allege that ICR violated § 1692f based on the same alleged conduct underlying her § 1692e claim—i.e., that she did not ultimately owe the debt that ICR sought to collect.  (Doc. No. 35-1 at 4.)  *See also Clark*, 460 F.3d at 1177–78 & n.12 (recognizing that "one action can give rise to multiple violations of the [FDCPA]" but noting that this "in no way implies that a violation of one provision of the FDCPA *automatically* constitutes a violation of another").

Here, for plaintiff to succeed on a claim brought under § 1692f(1), she would need to show that ICR sought to collect an amount greater than that which was authorized by the underlying debt agreement.  Plaintiff's contention that ICR attempted to collect a debt she did not owe, does not dispute or assert that the amount ICR sought to collect was greater than that authorized by the underlying debt agreement.  There is no evidence before the court on summary

1   judgment showing that ICR's collection activities—i.e., sending four collection letters—would

2   confuse a hypothetical least sophisticated consumer that the amount ICR sought to collect was

3   greater than the amount allowed under the debt agreement.  *See Valdez*, 2021 WL 5108755, at *9.

4   Rather, "where the amount being collected by the collection agency [is] not different than the

5   amount owed, § 1692f(1) [is] inapplicable to the plaintiff's claim that the collection agency was

6   attempting to collect the debt from the wrong person."  *Blackmon*, 2021 WL 1541647, at *5; *see*

7   *also Valdez*, 2021 WL 5108755, at *8–9 (granting summary judgment in favor of a debt collector

8   on a § 1692f(1) claim that was based on the debt collector seeking to collect a student loan debt

9   that did not belong to the plaintiff).

10          In addition, to the extent plaintiff's § 1692f claim generally asserts ICR's communications

11   constituted "unfair or unconscionable" debt collection practices, the court finds that the collection

12   letters sent directly to plaintiff were "informational and non-threatening."  *Healey*, 2011 WL

13   1900149, at *10 (citing *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100–01 (9th Cir.1996)).

14   There is no basis upon which to find that contacting the person matching the account holder about

15   the debt could qualify as "unfair or unconscionable means" in this case.  *See Warner*, 540 F.

16   Supp. 3d at 965 (granting summary judgment in favor of a debt collector on a § 1692f claim

17   where the debt collector used a default judgment to levy plaintiff's bank account despite

18   plaintiff's repeated assertion (and later presentation of proof) that the plaintiff was not the person

19   in fact responsible for the delinquent debt).

20          Accordingly, because there is no dispute of material fact on summary judgment showing

21   that ICR sought to collect an amount greater than the underlying debt agreement or that sending

22   collection notices constitutes an "unfair or unconscionable means" to collect a debt, the court

23   concludes that ICR did not violate § 1692f by trying to collect a debt that was not in fact owed by

24   plaintiff.  Thus, the court will grant ICR's motion for summary judgment as to plaintiff's FDCPA

25   claim to the extent it is predicated on an alleged violation of § 1692f.

26   /////

27   /////

28   /////

**CONCLUSION**

For the reasons explained above:

1.    Plaintiff's motion for summary judgment (Doc. No. 30) is denied as having been rendered moot by her acceptance of defendant DOE's Rule 68 offer of judgment;

2.    Defendant ICR's application (Doc. No. 39) to correct and substitute its previously filed motion for summary judgment is granted;

3.    Defendant ICR's motion for summary judgment (Doc. No. 32) is granted, in part:

   a.    Defendant ICR's motion for summary judgment on plaintiff's FDCPA claim predicated on an alleged violation of § 1692g claim is granted;

   b.    Defendant ICR's motion for summary judgment on plaintiff's FDCPA claim predicated on an alleged violation of § 1692e claim is denied; and

   c.    Defendant ICR's motion for summary judgment on plaintiff's FDCPA claim predicated on an alleged violation of § 1692f claim is granted.

4.    The matter is referred to the assigned magistrate judge to re-schedule dates for a Final Pretrial Conference and Jury Trial in this action; and

5.    The Clerk of the Court is directed to terminate defendant U.S. Department of Education as a named defendant in this action.

IT IS SO ORDERED.

Dated:    __**April 11, 2022**__                    _Dale A. Drozd_____
                                UNITED STATES DISTRICT JUDGE